1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7
EASTERN DISTRICT OF CALIFORNIA

8
| FRANCIS A. ORFF, et al., | 1:93-CV-05327 OWW SMS |
|---|---|
| Plaintiffs, | ORDER RE PLAINTIFFS' MOTION TO RECONSIDER JUDGMENT AND TO TRANSFER CASE TO THE COURT OF FEDERAL CLAIMS |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

9
10
11
12
13
14

15
**I.   INTRODUCTION**

16
     Before the court for decision is Plaintiffs' motion for

17
reconsideration of the judgment of dismissal of this case,

18
entered November 4, 2000, to permit the case to be transferred to

19
the Federal Court of Claims.  Doc. 687, filed July 28, 2005.  The

20
Federal Defendants oppose transfer on the grounds (1) that the

21
district court has no jurisdiction to reconsider the judgment

22
and, in the alternative, (2) that transfer is not appropriate.

23
Doc. 688, filed Aug. 25, 2005.  Intervenor Defendants also

24
oppose.  Doc. 691, filed Aug. 26, 2005.

25
26
27
28

1

## II.  **BACKGROUND**

This case has a long and complex procedural history set forth in numerous published opinions.  For the purposes of this motion, the United States Supreme Court's brief summary of the litigation provides a sufficient overview:

> The present case arose from water delivery reductions in the early 1990's. Those reductions stemmed from environmental obligations imposed on the Bureau by the 1992 enactment of the Central Valley Project Improvement Act (CVPIA). The CVPIA directed the Secretary of the Interior to "operate the [CVP] to meet all obligations under...the Federal Endangered Species Act" (ESA), and to dedicate annually a certain amount of CVP water to implement fish, wildlife, and habitat restoration. In the early 1990's, the National Marine Fisheries Service listed the Sacramento River winter-run chinook salmon as a threatened species under the ESA; and, in 1993, the United States Fish and Wildlife Service listed the delta smelt as a threatened species. The Bureau concluded that pumps used to deliver water south of the Sacramento-San Joaquin Delta could harm these species. To avert possible harm to these species and other wildlife, the Bureau concluded that it needed to reduce the water delivery. In the 1993-1994 water year, the Bureau reduced by 50 percent the contractual delivery of CVP water to water districts south of the Delta, including Westlands.
>
> In 1993, Westlands and several other water districts challenged the Bureau's 50-percent delivery reduction under the Administrative Procedure Act, the ESA, the National Environmental Policy Act of 1969, and the Due Process and Takings Clauses of the Fifth Amendment. Petitioner landowners and water users intervened as plaintiffs. Respondent Natural Resources Defense Council and other fishing and conservation organizations intervened as defendants. Ultimately, following negotiations among the State of California, the Federal Government, and urban, agricultural, and environmental interests, the water districts and all parties except petitioners stipulated to the dismissal of the districts' complaint.
>
> Petitioners pressed forward with numerous claims. The District Court dismissed some of them and granted summary judgment for the Government on others, leaving only the claim at issue here: that the United States had breached the 1963 contract by reducing the delivery of water and was liable for money damages. Petitioners contended that the United States had waived its

2

sovereign immunity from their suit in the Reclamation
Reform Act, 43 U.S.C. § 390uu. The District Court
initially held that petitioners were intended
third-party beneficiaries and that the language of §
390uu was broad enough to allow their suit, but on
reconsideration changed its view. It held that, in
light of intervening circuit authority, Klamath Water
Users Protective Assn. v. Patterson, 204 F.3d 1206
(C.A.9 1999), petitioners were neither contracting
parties nor intended third-party beneficiaries of the
1963 contract, and therefore could not benefit from §
390uu's waiver.

The Court of Appeals affirmed in relevant part. It
agreed with the District Court's reading of the 1963
contract and § 390uu in light of Klamath. 358 F.3d, at
1144-1147. The Court of Appeals noted that its decision
might be at odds with H.F. Allen Orchards v. United
States, 749 F.2d 1571 (Fed. Cir. 1984), which had
reached the opposite conclusion with respect to farmers
who belonged to an irrigation district in Washington.
[The Supreme Court] granted certiorari.

*Orff v. United States*, 125 S. Ct. 2606, 2608-9 (2005).

In their Petition for Writ of Certiorari, Plaintiffs
presented the following question to the Supreme Court,
emphasizing the inter-circuit conflict on the intended third-
party beneficiary issue:

[W]hether farmers are "intended" third-party
beneficiaries of their irrigation district's water
service and repayment contracts with the U.S. Bureau of
Reclamation and, therefore, entitled to sue the Bureau
for breach thereof, as the Federal Circuit has long
held, or merely "incidental" third-party beneficiaries
and, therefore, not so entitled, as the Ninth Circuit
holds in the decision below.

2004 WL 1136494.  The Supreme Court did not directly address the
question presented, whether Plaintiffs were intended third-party
beneficiaries of their water districts' federal water services
contracts, holding instead that § 390uu, as interpreted under
party joinder rules:

grants consent "to join the United States as a
necessary party defendant in any suit to adjudicate"
certain rights under a federal reclamation contract.

**3**

1
2
3
4

> This language is best interpreted to grant consent to
> join the United States in an action between other
> parties--for example, two water districts, or a water
> district and its members--when the action requires
> construction of a reclamation contract and joinder of
> the United States is necessary.  It does not permit a
> plaintiff to sue the United States alone.

5   125 S. Ct. at 2607.

6

7   ### III.   **STANDARD OF REVIEW**

8       Plaintiffs invoke Federal Rule of Civil Procedure 60(b) and

9   Local Rule 78-230(k).

10      Rule 60(b) provides:

11
12
13
14
15
16
17
18

> On motion and upon such terms as are just, the court
> may relieve a party or a party's legal representative
> from a final judgment, order, or proceeding for the
> following reasons: (1) mistake, inadvertence, surprise,
> or excusable neglect; (2) newly discovered evidence
> which by due diligence could not have been discovered
> in time to move for a new trial under Rule 59(b); (3)
> fraud (whether heretofore denominated intrinsic or
> extrinsic), misrepresentation, or other misconduct of
> an adverse party; (4) the judgment is void; (5) the
> judgment has been satisfied, released, or discharged,
> or a prior judgment upon which it is based has been
> reversed or otherwise vacated, or it is no longer
> equitable that the judgment should have prospective
> application; or (6) any other reason justifying relief
> from the operation of the judgment.

19
20      Local Rule 78-230(k) provides:

21
22
23
24
25

> Whenever any motion has been granted or denied in whole
> or in part, and a subsequent motion for reconsideration
> is made upon the same or any alleged different set of
> facts, it shall be the duty of counsel to present to
> the Judge or Magistrate Judge to whom such subsequent
> motion is made an affidavit or brief, as appropriate,
> setting forth the material facts and circumstances
> surrounding each motion for which reconsideration is
> sought, including:

> ***

26
27
28

> (3) what new or different facts or circumstances are
> claimed to exist which did not exist or were not shown
> upon such prior motion, or what other grounds exist for
> the motion, and

> (4) why the facts or circumstances were not shown at
> the time of the prior motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.   **ANALYSIS**

A.   **Jurisdiction to Reconsider**.

"[A] District court may reconsider its prior rulings so long as it retains jurisdiction over the case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004). As a general rule, once a notice of appeal has been filed, "jurisdiction is transferred from a district court to a court of appeals." *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam)). However, once the appeal has been decided, a district court may entertain a motion to reconsider under certain circumstances. If an appellate court has remanded the case, the district court has jurisdiction over post-judgment motions. The law is less clear whether a district court may hear a motion to reconsider under Rule 60(b) in the absence of remand.

A district court's authority to hear a Rule 60(b) motion in the absence of a remand is discussed in the Supreme Court's holding in *Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976). In *Standard Oil*, the district court enjoined Standard Oil from engaging in certain forms of conduct violative of the Sherman Act. *United States v. Standard Oil Co. of Cal.*, 362 F. Supp. 1331, 1342 (D.C. Cal. 1973). This judgment was summarily affirmed on appeal. 412 U.S. 924 (1973). Several years later, Standard Oil filed a motion with the Supreme Court, seeking leave to proceed with a Rule 60(b) motion before the district court. The Supreme Court held that it was not necessary for Standard Oil to apply for leave before proceeding in the

**5**

district court, reasoning that the district judge would not flout the existing mandate by acting on the Rule 60(b) motion since the appellate decision related only "to the record and issues then before the court, and [did] not purport to deal with possible later events."  429 U.S. at 18.

The Ninth Circuit examined *Standard Oil* in *Gould v. Mutual. Life Insurance Co. of New York*, 790 F.2d 769 (9th Cir. 1986), acknowledging that many commonly-cited cases support the proposition that "the district court never regains jurisdiction in the absence of a remand."  However, citing *Standard Oil*, *Gould* held that "once the appellate mandate has issued, leave of this court is not required for district court consideration of a 60(b) motion."  *Id.* at 774.

The Second Circuit, in *Deweerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994), suggests that *Standard Oil's* holding only applies to Rule 60(b) motions based upon "<u>later events</u> [] that were <u>not previously considered by the appellate court</u>." (emphasis added); *see also* Wright & Miller, Fed. Prac. & Proc. § 2873 ("[T]he district judge is not free to flout the decision of the appellate court so far as it goes, but he should be free to consider whether <u>circumstances not previously known to either court</u> compel [reconsideration].")(emphasis added).

Here, Plaintiffs filed notices of appeal from the judgment in November 2000.  *See* Doc. 652, filed Nov. 4, 2000 (Plaintiff Francis A. Orff); Doc. 657, filed Nov. 17, 2000 (Plaintiff Westlands Water District).  Westlands later withdrew its appeal. On April 16, 2004, the Ninth Circuit affirmed the district court's decision that sovereign immunity deprived it of

jurisdiction to hear the farmers' claims based on the rule of *Klamath Water Users Protective Association v. Patterson*, 204 F.3d 1206 (9th Cir. 2000); and vacated rulings on the merits because the district court lacked jurisdiction to entertain those claims. *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004).  The United States Supreme Court affirmed the Court of Appeals' *Orff* judgment.  Neither appellate court remanded any aspect of the case to the district court for further proceedings.

Plaintiffs now request reconsideration of the 2000 district court judgment, pointing not to any changed circumstance or change in law that occurred <u>after</u> the appellate decision, but to the <u>appellate decision itself</u>, which they contend changes the law and the law of this case.  Under *Deweerth*, there is no jurisdiction to consider this request, because Plaintiffs' 60(b) motion is not grounded in "later events...not previously considered by the appellate court."  However, the Ninth Circuit's language in *Gould* is more expansive than the limited holding in *Deweerth*.  Based on the general principle that a court always has jurisdiction to determine its own jurisdiction, *Molina-Camacho v. Ashcroft*, 393 F.3d 937, 939 (9th Cir. 2004), it is appropriate to address Plaintiffs' motion to reconsider.

## B.   Motion for Reconsideration.

### 1.   Authority to Reconsider.

Plaintiffs advance two theories for reconsideration of the judgment of dismissal.  First, that there has been a change in controlling authority meriting relief under Rule 60(b).  Alternatively, that the district court has independent authority,

**7**

1  apart from Rule 60(b), to reconsider its earlier judgment for the

2  limited purpose of transferring the case to another court.

3              **a.    *Rule 60(b)*.**

4       A district court may reconsider a judgment under Rule 60(b)

5  when it is presented with newly-discovered evidence, it has

6  committed a clear error or its initial decision was manifestly

7  unjust, or if an intervening change in controlling law takes

8  place. *United States v. Westlands Water Dist.*, 134 F. Supp. 2d

9  1111, 1130 (E.D. Cal. 2001).  Plaintiffs maintain that the

10 Supreme Court's *Orff* decision changes controlling law.  Although

11 Plaintiffs couch much of their argument in terms of the "law of

12 the case," the standard for reconsideration under Rule 60(b) is

13 not concerned with the law of the case.[1]  Rather, to justify

14 reconsideration under Rule 60(b), Plaintiffs must show a change

15 in controlling law.  The Ninth Circuit has, in a separate case

16 decided after *Orff*, expressly determined that its holdings in

17 *Orff* concerning the third party beneficiary issue were not

18 disturbed by the Supreme Court's *Orff* opinion.  The Supreme Court

19 did not reach the intended third-party beneficiary issue and

20 affirmed the Ninth Circuit's *Orff* decision without limitation.

21      Plaintiffs have always maintained that they are intended

22 third-party beneficiaries under the contracts between their water

23 districts and the United States.  Initially, the district court

24 agreed.  Doc. 588, filed June 5, 1998, at 18.  Upon

25

26      [1]   The status of the law of the case after the Supreme
27 Court's decision in *Orff* is germane to the analysis of the merits
   of Plaintiffs' transfer motion.  This issue is discussed *infra* at
28 Part IV.B.2.b.

**8**

1  reconsideration in light of the Ninth Circuit's intervening

2  decision *in Klamath Water Users*, 204 F.3d 1206, Plaintiffs were

3  found to lack standing to sue under § 390uu as "contracting

4  entities," because "Plaintiffs are not contracting parties or

5  intended third-party beneficiaries of the 1963 Contract."  2000

6  WL 34510766.  This meant that the district court lacked

7  jurisdiction over Plaintiffs' contract claims because the limited

8  waiver of sovereign immunity set forth in § 390uu did not apply

9  to Plaintiffs.

10      The Ninth Circuit affirmed this jurisdictional holding of

11 the district court.  358 F.3d at 1149-50.  The Ninth Circuit

12 vacated the district court's prior rulings on the merits of the

13 case, "[b]ecause the district court lacked jurisdiction to

14 entertain those claims...."  *Id*.

15      Plaintiffs parsed this jurisdictional issue to the Supreme

16 Court:

17              [W]hether farmers are "intended" third-party
                beneficiaries of their irrigation district's water
18              service and repayment contracts with the U.S. Bureau of
                Reclamation and, therefore, entitled to sue the Bureau
19              for breach thereof, as the Federal Circuit has long
                held, or merely "incidental" third-party beneficiaries
20              and, therefore, not so entitled, as the Ninth Circuit
                holds in the decision below.
21

22 Petition for Certiorari in *Orff*, 2004 WL 1136494.  The Supreme

23 Court's affirmance did not reach the third party beneficiary

   issue, relying instead on an analysis of § 390uu's grant of
24
   consent "to join the United states as a necessary party
25
   defendant...."  125 S. Ct. at 2609.  Plaintiffs claim that, by
26
   declining to reach the issue of their status as third-party
27
   beneficiaries and affirming the absence of jurisdiction based
28

**9**

1  only on an analysis of the joinder language, the Supreme Court
2  effectively vacated the Ninth Circuit's opinion on the merits.
3  However, the Supreme Court did not say this.
4       After *Orff*, the Ninth Circuit expressly ruled that *Orff* is
5  ruling law of the Circuit:

> Our holding in *Orff* was not disturbed by the Supreme
> Court. In its *Orff* opinion, the Court construed 43
> U.S.C. § 390uu as insufficient to waive sovereign
> immunity for suits brought solely against the United
> States. The Court held § 390uu permits joinder of the
> United States when necessary to permit a complete
> adjudication of rights under a reclamation contract.
> The Court expressly declined to decide the question we
> answered in our opinion in *Orff*, namely, whether §
> 390uu grants consent to suit by noncontracting
> entities.

12 *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028,
13 1036 at n.6 (9th Cir. 2005)(citations omitted).  *Smith* is binding
14 precedent upon the district court.  Plaintiffs' arguments
15 concerning the validity and/or precedential value of the holding
16 in *Smith* are more appropriately directed to the Court of Appeals.
17 *Smith* specifically holds that there has been no change in
18 controlling law.  *Klamath Water Users* and *Orff* have not been
19 changed by the Supreme Court.  *See also Barapind v. Enomoto*, 400
20 F.3d 744, 751 (9th Cir. 2005) (emphasizing that any rule
21 articulated by a majority of a panel of the Ninth Circuit,
22 "regardless of whether it was in some technical sense 'necessary'
23 to [the panel's] disposition of the case" becomes the law of the
24 circuit).  Under *Barapind*, the district court is not free to
25 ignore or question the Court of Appeal's ruling in *Smith*.  There
26 is no authority to reconsider the judgment under Rule 60(b) based
27 on an alleged change in the law.  The Ninth Circuit's *Orff*
28 decision holding that Plaintiffs lack standing as third-party

beneficiaries remains the law of the circuit.  The district court
cannot exercise jurisdiction on this ground.

### b.   *Independent authority to reconsider for the limited purpose of transfer*.

Plaintiffs' alternative basis for reconsideration is that
reconsideration of a judgment for the <u>limited purpose of transfer</u>
may be appropriate even in the absence of the traditional Rule
60(b) prerequisites.  The cases cited by Plaintiffs, *Lan-Dale Co.
v. United States*, 60 Fed. Cl. 299, 302-04 (2004); *Untersinger v.
United States*, 181 F.2d 953, 954-55 (2d Cir. 1950), do support
this proposition.  Although neither case is controlling,
Defendants do not offer any contrary authority.  In an abundance
of caution, the merits of the motion to reconsider are addressed
for the limited purpose of analyzing the appropriateness of
transfer to the Court of Federal Claims.

### 2.   Motion for Transfer to the Court of Federal Claims.

Plaintiffs' transfer motion is governed by 28 U.S.C.
§ 1631, which provides:

> Whenever a civil action is filed in a court...and that
> court finds that there is a want of jurisdiction, the
> court shall, if it is in the interest of justice,
> transfer such action...to any other such court in which
> the action...could have been brought at the time it was
> filed or noticed, and the action...shall proceed as if
> it had been filed in or noticed for the court to which
> it is transferred on the date upon which it was
> actually filed in...the court from which it is
> transferred.

Transfer under § 1631 requires that the transferor court find:
(1) it lacks jurisdiction over the claims in the case; (2) the
Court of Federal Claims would have been able to exercise

**11**

jurisdiction over the matter as of the date the case was filed in district court; and (3) the transfer serves the interests of justice. *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074-75 (9th Cir. 2001).

### a.   *Absence of jurisdiction in the transferor court.*

The transferor court lacks jurisdiction.  The Supreme Court held that § 390uu does not waive the United States' sovereign immunity from suits, such as this one, brought directly against the United States.  *Orff*, 125 U.S. at 2611.  A determination that a suit is barred by sovereign immunity is the equivalent of a determination that the district court lacks subject matter jurisdiction over the dispute.

### b.   *Jurisdiction in the Court of Federal Claims.*

Whether the Court of Federal Claims has jurisdiction over any transferred claims is governed by the Tucker Act, 28 U.S.C. § 1491, which grants jurisdiction to the Court of Federal Claims "to render judgment upon any claim against the United States founded...upon the Constitution...or *any express or implied contract* with the United States."

Under the Tucker Act, those who lack privity with the United States cannot sue on a contract theory.  *See JGB Enterprises Inc. v. United States*, 63 Fed Cl. 319, 331-32 (Fed. Cl. 2004).  However, an intended third-party beneficiary does have standing to sue.  *Id.*[2]

---

[2]    Plaintiffs point to language from the Supreme Court opinion in *Orff* that suggests that the Tucker act has wider jurisdictional scope than § 390uu.  125 S. Ct. at 2611.  But the passage on which Plaintiffs rely concerns the absence of joinder

1    Prior to the Supreme Court's decision in *Orff,* the law of
2  this case was that Plaintiffs are not "contracting entities"
3  under § 390uu because they are not intended third-party
4  beneficiaries to the contracts between the irrigation districts
5  and the United States.  So long as this ruling is the law of the
6  case, it follows Plaintiffs' claims to the Court of Federal
7  Claims.[3]  Because the Court of Federal Claims also requires a
8  third-party plaintiff suing the United States on a contract
9  theory to be an intended third party beneficiary of that
10 contract, *see JGB Enterprises*, 63 Fed Cl. at 331-32, application
11 of the prior ruling of the Ninth Circuit as the law of the case
12 renders meritless the contract claims that Plaintiffs seek to
13 assert before the Court of Claims.  Plaintiffs concede as much
14 and argue that this is a reason they did not earlier seek
15 transfer of the case to the Court of Claims.  Plaintiffs
16 maintain, however, that the Supreme Court's decision in *Orff*

17

18
19 language in the Tucker Act.  The Supreme Court in no way suggests
   that the Tucker Act is broader in any other respect, for example,
20 that it would permit Plaintiffs to sue on a contract theory even
   if they are not intended third party beneficiaries to the
21 contract.

22        [3]    It is well established that the law of the case from
   the transferor court applies to the transferee court and that the
23 transferor court must decide whether the transferee court would
   have jurisdiction.  *See Christianson v. Colt Indus. Operating
24 Corp.*, 486 U.S. 800, 819 (1988).  Plaintiffs suggest that this
   court should not even decide this law of the case issue (i.e.,
25 the issue should be resolved by the Court of Federal Claims).
   But, 28 U.S.C. § 1631 requires the <u>transferor</u> court to make a
26 ruling on the justiciability of this case in the transferee
   court.  To do so, the district court must examine the law of the
27 case issue, as it relates to the question of whether the Court of
   Federal Claims has jurisdiction over this case.
28

**13**

1  altered the law of the case by "nullifying" any rulings in the

2  lower courts concerning their status as third-party

3  beneficiaries.   Plaintiffs insist that their case can now move

4  forward unburdened by prior adverse rulings regarding their

5  status as third-party beneficiaries.

6       To be clear -- the Court of Federal Claims would be bound,

7  not by Ninth Circuit precedent concerning third party beneficiary

8  issue, but by the prior ruling of the Ninth Circuit in this case.

9  This distinction is critical.   District courts in the Ninth

10  Circuit are absolutely bound by Ninth Circuit precedent and are

11  required to follow the Ninth Circuit's holdings in *Orff* (and

12  *Smith*).   *Smith* dictates that on the third-party beneficiary

13  issue, the Ninth Circuit's *Orff* rule controls.   If this case had

14  been brought initially in the Court of Federal Claims or had been

15  transferred to the Court of Federal Claims before the district

16  court's 2000 *Orff* decision, the Court of Federal Claims would

17  have been free to follow its own precedents, beginning with *H.F.*

18  *Allen Orchards v. United States*, 749 F.2d 1571, 1576 (Fed. Cir.

19  1984).   Here, however, the Ninth Circuit has ruled that

20  Plaintiffs do not have standing under § 390uu because they are

21  not intended third-party beneficiaries under the contracts

22  between Westlands and the United States.   As long as this ruling

23  is the law of the case, it follows the case to the transferee

24  court and Plaintiffs do not have standing to sue under the Tucker

25  Act either.[4]

26

27       [4]   The post-judgment status of this case somewhat strains

28  the reach of the law of the case doctrine.   The law of the case
   doctrine is generally applied to courts' treatment of prior

**14**

1    The question is:  Does the Ninth Circuit's ruling in this

2    case -- that Plaintiffs are not third-party beneficiaries (and

3    therefore do not have standing to sue) -- still operate as the

4    law of this case after the Supreme Court's decision in *Orff*?

5    This question was raised in the abstract in *Preferred*

6    *Communication, Inc. v. City of Los Angeles*, 13 F.3d 1327, 1330

7    n.4 (9th Cir. 1994):

8            The precise status of one of our opinions which has
             been affirmed by the Supreme Court on different grounds
9            is uncertain. Does it continue to be the law of the
             case? Circuit precedent? We need not decide [in this
10           case].

11   The Ninth Circuit has not yet answered the question raised in

12   *Preferred Communication*.[5]

13   The parties cite a number of cases to support their

14   positions on this issue, but most, if not all, of these cases are

15   distinguishable.  For example, both parties rely upon cases which

16

17   rulings in a particular case <u>before</u> entry of judgment.  Wright &
     Miller, Fed. Prac. & Proc. § 4478 ("As rules that govern within a
18   single action, [law of the case rules] do not involve preclusion
     by final judgment; instead they regulate judicial affairs before
19   final judgment.").  In most cases, the law of the case no longer
     binds the parties after entry of judgment; rather, principles of
20   claim and issue preclusion control.  Here, judgment was entered
     in the district court and affirmed by the Ninth Circuit and the
21   Supreme Court.  Plaintiffs now seek to have their case
     transferred to another court.  In so doing, they essentially seek
22   to avoid those judgments.  The law of this case still binds the
23   parties for the purposes of this transfer motion.

24

25   [5]    Although the Ninth Circuit has specifically determined
     that its own decision in *Orff* on the third party beneficiary
26   issue is still good <u>law</u>, applicable as precedent to other cases
     pending in this circuit, the *Smith* court only inferentially
27   addresses whether the <u>law of the case</u> was altered by the Supreme
     Court in *Orff*.

28

**15**

discuss a court's authority to <u>depart from</u> existing law of the case. *E.g. Quern v. Jordan*, 440 U.S. 332, 347 n.18 (holding that the law of the case "comes into play only with respect to issues previously determined" by the appellate court; accordingly, the lower court may revisit matters left open by the mandate of the appellate court).  Under this line of authority, an external legal decision that operates as an "intervening change in the law" may empower a court to depart from the law of the case. *See United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997). Here, Plaintiffs actually argue that the law of the case was <u>changed</u> by the Supreme Court decision, not that the Supreme Court decision somehow authorizes this court to <u>depart</u> from the law of the case.[6]  The parties do not distinguish between these two distinct lines of reasoning, nor do they point to any cases which actually address the question raised by the Ninth Circuit in *Preferred Communication*:  What happens to a particular holding's

---

[6]   Even if Plaintiffs requested departure from the law of the case, the district court is not permitted to do so here.  A court may depart from previously decided issues if: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."  *Alexander,* 106 F.3d at 876. "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id*.  The Ninth Circuit's decision in *Smith* is binding precedent. It resolved this question by holding that there had been no change in the law with respect to Plaintiffs' status as intended third party beneficiaries.  The 2000 district court decision in this case was affirmed and has not been overturned, and the Appeals Court's *Orff* decision has been affirmed by the Supreme Court.  The third-party beneficiary holding is not clearly erroneous; that law has not changed; there is no new evidence; circumstances have not changed; and no manifest injustice would result.

1  status as law of the case when the circuit court's decision is

2  affirmed by the Supreme Court on different grounds?

3      The parties also rely upon cases which concern principles of

4  issue preclusion.  The pertinent preclusion rule in the Ninth

5  Circuit and the Federal Circuit is:

6          If a court of first instance [] bases its judgment on
           alternative grounds, and the reviewing court affirms
7          the judgment on only one of the two grounds, refusing
           to consider the other, the second ground is no longer
8          conclusively established.

9  *Martin v. Henley*, 452 F.2d 295, 300 (9th Cir. 1971).  The Federal

10  Circuit applies a similar rule.  *Janicki Logging Co., Inc. v.*

11  *United States*, 36 Fed. Cl. 338, 340 (Fed. Cl. 1996); *see also* 18

12  Moore's Fed. Prac., Civil § 132.03; Rest. 2d Judgments § 27,

13  comment o (1982).  This rule protects a litigant's right to

14  appellate review:

15          This approach to issue preclusion makes eminent sense.
           Our legal system generally allows litigants the
16          opportunity to secure appellate review of adverse trial
           court judgments. Defendant's approach would undermine
17          this right by binding a litigant to a trial court's
           determination of an issue on which the litigant did not
18          have an opportunity to secure appellate resolution.

19  *Janicki*, 36 Fed. Cl. at 340-41.  Here, Plaintiffs had a full

20  opportunity for appellate review of the district court's (the

21  court of first instance's) decision on the third-party

22  beneficiary issue.  The court of first instance did not base the

23  jurisdictional issue of standing under the contract on

24  alternative grounds.  That the Supreme Court did not reach the

25  third-party beneficiary issue does not diminish the adequacy of

26  the review opportunities Plaintiffs invoked in this case.

27      There is also reason to doubt whether it is appropriate to

28  apply issue preclusion rules to the circumstances of the instant

**17**

1  case.  Issue preclusion is distinct from the law of the case

2  doctrine:

> The law of the case doctrine is a rule of practice that
> promotes the finality and efficiency of the judicial
> process by protecting against the disturbance of
> settled issues. It is thus similar to the doctrine of
> issue preclusion. However, while the doctrine of issue
> preclusion forbids relitigation by the same parties in
> any future lawsuit of an issue determined by a valid
> and final judgment, the law of the case doctrine
> provides that the law applied in decisions at one stage
> of litigation, must be applied as the governing
> principle in later stages of the same litigation.

9  3 Moore's Manual, Fed. Prac. & Proc. § 30.02.[7]

10      Ninth Circuit authority suggests that cross-referencing

11  issue preclusion precedent in the context of a law of the case

12  dispute is not appropriate.  In *Martin*, the Ninth Circuit

13  examined the application of both the preclusion and law of the

14  case doctrines by a bankruptcy referee.[8]  452 F.2d 295.

15  Initially, the referee relied on two grounds for denying a stay:

16  (1) unclean hands and (2) the referee's determination that the

17  debt was not dischargeable.  On appeal, the district court

18  affirmed the bankruptcy court on the ground of unclean hands

19  alone.  The Ninth Circuit held that the referee's prior

20  determination concerning the dischargeability of the debt was not

21  binding upon the parties under issue preclusion principles:

22  _____

23      [7]   The Ninth Circuit's decision on the third-party
    beneficiary standing issue is a final judgment affirmed by the
24  Supreme Court.  But, Plaintiffs seek to re-open that judgment and
    are therefore subject to the law of the case doctrine.  *See*
25  discussion *supra* at note 4.

26      [8]   Prior to the passage of the Bankruptcy Reform Act of
    1978, Pub. L. 95-598, Bankruptcy Judges were referred to as
27  "Referees."  *See Linden v. Meecham*, 980 F2d 1450, 1453 (D.C. Cir.
28  1992).

**18**

1
2
3

> If a court of first instance (the referee here) bases
> its judgment on alternative grounds, and the reviewing
> court affirms the judgment on only one of the two
> grounds, refusing to consider the other, the second
> ground is no longer conclusively established.

4   However, the Ninth Circuit held that the referee could continue

5   to rely on the validity of the non-dischargeability determination

6   as <u>law of the case</u>, "unless and until it was <u>disapproved</u> on

7   review." *Id.* at 300.  Although the *Martin* court did not provide

8   any reasoning to support this assertion, the Ninth Circuit has

9   forcefully emphasized the binding effect of its rulings, even

10  rulings that are arguably dicta.  *See Barapind*, 400 F.3d at 751.

11      The *Martin* rule also supports the over-arching purpose of

12  the law of the case doctrine: to promote finality and prevent the

13  possibility of endless litigation.[9]  *See Herrington v. County of*

14  ────────────────────

15      [9]    One district court has directly addressed the relevant
16  legal question, *United States v. Board of Education of Chicago*,
    588 F. Supp. 132 (D.C. Ill. 1984).  However, the specific factual
17  holding of the district court on this issue was vacated by the
    Seventh Circuit.  *United States v. Bd. of Educ. of City of*
18  *Chicago*, 744 F.2d 1300, 1306 (7th Cir. 1984).  The district court
    opinion is nonetheless discussed because it appears to be the
19  only federal case on point.

20      As background, the law of the case doctrine is often
21  described as having two "branches," both of which operate to
    control when and under what circumstances a court may reconsider
22  its own decisions made at prior stages of the same proceedings.
    The first, prudential, branch of the doctrine concerns a court's
23  ability to reconsider its own prior decisions that have not been
    the subject of a mandate or remand from a higher court.  The
24  second branch of the law of the case doctrine, sometimes
    referenced as the "mandate doctrine" concerns a lower court's
25  obligation to conform to the mandate of a higher court during the
    course of litigation.  Under the mandate rule, only if
26  intervening higher authority contradicts the higher court's
    mandate should the lower court depart from the mandate's
27  instructions.  *See Oneida Indian Nation of N.Y. v. County of*
    *Oneida*, 214 F.R.D. 83, 91 (N.D.N.Y 2003).  Here, the Supreme
28

1  *Sonoma*, 2 F.3d 901, 904 (9th Cir. 1993)("The [law of the case

2  doctrine] is a judicial invention designated to aid in efficient

3  operation of court affairs."); *Planned Parenthood of Cent. & N.*

4  *Ariz. v. Ariz.*, 718 F. 2d 938, 949 (9th Cir. 1983)("The

5  discretion of a [] court to review its earlier decisions should

6  be exercised sparingly in order to avoid undermining the policy

7  of finality that underlies the rule."); *Toro Co. v. White Consol.*

8  *Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004)("The doctrine

9  of law of the case was created to ensure judicial efficiency and

10  to prevent the possibility of endless litigation.").

11       In theory, the *Martin* rule deprives Plaintiffs of an

12  opportunity for a Supreme Court ruling on the third party

13  beneficiary issue.  However, the Supreme Court chose not to

14  _____

15  Court's *Orff* decision is not contradictory on the issue of third
   party beneficiary standing under the contracts.

16

17       The district court in *Board of Education of Chicago* held:

18           Where there are alternative factual or legal grounds
             for a District Court decision, and the Court of Appeals
19           considers only one, the other grounds are not deemed
             "decided" (accepted or rejected by implication) for
20           purposes of the second branch of law of the case. Those
             alternative grounds do remain the law of the case in
21           the District Court under the first branch of the
             doctrine.
22

23  588 F. Supp. at 212-13.  Under this holding, even where an
    appellate court has failed to consider an alternate legal ground
24  for dismissal, that alternative ground remains the law of the
    case under the prudential branch of the doctrine.  A district
25  court in the Ninth Circuit may depart from the law of the case,
    under the rules set forth in *Alexander*, 106 F.3d at 876.
26  However, for the reasons stated above, *supra* at 16, departure is
    not warranted in this case.  The Appeals Court expressly decided
27  the contract standing issue.

28

1   address the issue, instead affirming the entire Court of Appeals

2   decision without discussion of all issues.  This deprivation was

3   discussed in the context of issue preclusion in *Janicki*.  36 Fed.

4   Cl. at 340.  *Janicki* was specifically concerned with the

5   possibility that a litigant might be deprived of the opportunity

6   to present a legal issue to a <u>circuit court of appeals</u>.  Some

7   form of circuit court review is a matter of right on appeal in a

8   civil case.  *See* 28 U.S.C. § 1291.  Here, full opportunity for

9   and consideration of the issue of contract standing has been

10  afforded in the Court of Appeals.  By contrast, consideration by

11  the Supreme Court of a civil case -- let alone every issue in a

12  civil case -- is rare and is by no means a civil litigant's

13  "right."  To hold that prior rulings of a Court of Appeals are no

14  longer law of the case because the Supreme Court chose not to

15  discuss alternative issues does not serve the finality interests

16  protected by the law of the case doctrine.[10]  Moreover, for claim

17

18  _____

19      [10]    If the operative holding from the Ninth Circuit's
    opinion in *Orff* were a ruling on the merits, the answer here

20  would be more clear-cut, because an appellate court finding that
    there is no jurisdiction automatically vacates any prior ruling

21  on the merits.  *See, e.g., Orff*, 358 F.3d at 1149.  However, the
    Ninth Circuit's holding is Orff concerned a jurisdictional issue

22  -- whether Plaintiffs had standing to sue as third-party
    beneficiaries.  While finding "subject-matter jurisdiction

23  necessarily precedes a ruling on the merits, the same principle
    does not dictate a sequencing of jurisdictional issues...."

24  *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584-85 (1999).  A
    court may "choose among threshold grounds for denying audience to

25  a case on the merits."  *Id.*  Under normal circumstances, a lower
    court's jurisdictional holding is not disturbed by a higher

26  court's affirmance on alternative jurisdictional grounds.  A
    ground that was not the subject of the affirmance might not have

27  preclusive effect for issue preclusion purposes, *see* discussion
    *supra* at 17-18, but the lower court ruling on that ground is

28  still good law.  *See Smith*, 418 F. 3d at 1036 n.6.

1    and issue preclusion purposes, Plaintiffs have fully litigated to

2    final judgment the issue of their standing on the merits in the

3    district and appellate courts

4        Although this is a close case, three factors point toward a

5    conclusion that the law of the case doctrine bars Plaintiffs'

6    pursuit of this litigation in the Court of Federal Claims.  First

7    the overarching goal of the law of the case doctrine is to avoid

8    never-ending litigation.  This case has been actively litigated

9    in the trial and appellate courts for twelve years since 1993.

10   Second, although there is a competing goal of ensuring access to

11   appellate review, no authority is cited to suggest that the full

12   hearing and decision on Plaintiffs' standing in the Court of

13   Appeals does not satisfy the requirement that the Plaintiff be

14   afforded the opportunity for appellate review.  A civil litigant

15   has no right nor reasonable expectation that the United States

16   Supreme Court will address each and every issue raised in a cert

17   petition, given the limited number of civil cases it reviews on a

18   discretionary basis each year.  The Ninth Circuit's holding in

19   *Martin*, 452 F.2d 295, suggests that a ruling remains law of the

20   case unless and until it is <u>directly</u> repudiated on appeal.

21   Plaintiffs sought relief from the Supreme Court, but failed to

22   obtain either reversal of the judgment or a ruling that in any

23   way repudiates the Ninth Circuit's decision.  Under *Barapind*, 400

24   F.3d at 751, the district court must follow the Ninth Circuit's

25   rule unless and until it is altered by the Ninth Circuit itself

26   or the Supreme Court.  *Smith* held that the *Orff* decision is

27   unaltered and remains the law of this circuit.

28       The motion to transfer must be **DENIED** on the grounds that

**22**

1  the Ninth Circuit's holding in *Orff* on the third-party

2  beneficiary issue remains the law of this case, binding the

3  tranferee court and barring Plaintiffs' from proceeding in the

4  Court of Federal Claims.

5                    **c.    *Interests of justice (manifest injustice)*.**

6         Arguendo, even if the Court of Federal Claims had

7  jurisdiction over Plaintiffs' claims, the interests of justice do

8  not favor a transfer.   A court may find that transfer is not in

9  the interest of justice if litigating the claim would likely be

10  futile in the alternative forum.   *Rodriguez-Roman v. I.N.S.*, 98

11  F.3d 416, 424 (9th Cir. 1996) ("[W]e may in cases that would

12  otherwise qualify, decline to transfer if the petition or appeal

13  is frivolous.").

14         With respect to the likelihood of success on the merits of

15  Plaintiffs' claims, the Federal Defendants point to a line of

16  cases holding that the federal government cannot be liable for

17  water flow reductions mandated by statute.   *See O'Neill v. United*

18  *States*, 50 F.3d 677, 687 (9th Cir. 1995); *see also*, *Rio Grande*

19  *Silvery Minnow v. Keys*, 333 F.3d 1109, 1127-31 (10th Cir. 2003)

20  (vacated on other grounds, 355 F.3d 1215 (10th Cir.2004));

21  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206,

22  1213 (9th Cir. 1999).   Plaintiffs rely on one Court of Federal

23  Claims case that departed from this general rule, *Tulare Lake*

24  *Basin Water Storage Dist. v. United States*, 49 Fed. Cl. 313, 320

25  (2001); but that decision was never appealed and has been

26  criticized by a more recent case from the same court, *see Klamath*

27  *Irrigation Dist. v. United States*, 67 Fed. Cl. 504, 536 (2005).

28  *Tulare Lake Basin* is not binding law of the federal circuit, as

**23**

it is a trial court decision.  The balance of authority, cited above, suggests that Plaintiffs' claims would likely fail on the merits.

An enormous amount of judicial, governmental and private resources have already been expended on this case.  It is true that "Plaintiffs are masters of their case.  They could have filed this case in the Court of Claims...." (Doc. 640, filed June 16, 2000.)  Plaintiffs rejected three express invitations from the district court, made at consequential stages of the litigation, to transfer this case to the Court of Federal Claims. The Supreme Court mentioned in a footnote to its opinion:  "[T]he district court invited petitioners several times to transfer their damages claims to the Court of Federal Claims, but petitioners did not accept those invitations," *Orff,* 125 F.2d at 2611 n.2; in part because Plaintiffs were concerned that the law of the case would bar their claims in the Federal Circuit.[11]  *See* Doc. 689, Ex. E, Tr. of Supreme Court Arg., at 7.  Plaintiffs sought Supreme Court review of the third-party beneficiary standing issue prior to transfer, but ultimately failed to obtain the relief they sought.

The Ninth Circuit's decision that Plaintiffs are not intended third party beneficiaries to the operative contracts and therefore lack standing to enforce these contracts is still the law of the case and the law of the Ninth Circuit.  It would not

---

[11]     There is no dispute that Plaintiffs' damages claims for an unlawful taking of property without due process of law are wholly contingent upon Plaintiffs' ownership of enforceable water rights, which they lack standing to prove under § 390uu.

**24**

serve the interests of justice to transfer this case to the Court
of Federal Claims, because to do so would be futile and a
needless consumption of further party and judicial resources.  No
manifest injustice occurs when Plaintiffs who lack standing to
sue the United States are finally foreclosed after twelve years
of litigation and uncontradicted legal rulings at every level of
the federal court system have found no federal jurisdiction to
entertain Plaintiffs damages claims.


## V.   CONCLUSION

     For the reasons set forth above, Plaintiffs motion for
reconsideration for the limited purpose of transferring this case
to the Court of Federal Claims is **DENIED.**


**SO ORDERED**


**Dated: November 14, 2005**

                              **/s/ OLIVER W. WANGER**

                              _____
                                   **Oliver W. Wanger**
                              **UNITED STATES DISTRICT JUDGE**